UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                  :

CHRISTIAN SMALLS, *on his own behalf and*  :
*on behalf of class of similarly situated African*  :
*American and Latina/o workers*,          :

                                  :

               Plaintiff,         :

                                  :

      vs.                             :

                                  :

AMAZON.COM SERVICES LLC,       :

                                  :

               Defendant.     :

---------------------------------------------------------x

Case No. 1:20-cv-5492-RPK-RLM

**Oral Argument Requested**

**Date Of Service:  Mar. 5, 2021**

## DEFENDANT'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF ITS MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND.................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.     THE COURT SHOULD DISMISS PLAINTIFF'S INDIVIDUAL
CLAIMS THAT HE WAS DISCHARGED BECAUSE OF HIS RACE
OR IN RETALIATION FOR PROTECTED ACTIVITY .................................. 6

     A.     Plaintiff Does Not Plausibly Allege That He Was Fired Because Of
His Race Or Any Protected Activity.......................................................... 6

     B.     Plaintiff's Retaliation Claims Also Fail Because He Does Not
Plausibly Allege That He Was Engaged In Any Protected Activity
Known To Amazon................................................................................... 11

     C.     Plaintiff's State- And Local-Law Retaliation Claims Are
Preempted By The National Labor Relations Act. ................................... 13

II.    THE COURT SHOULD DISMISS PLAINTIFF'S PUTATIVE CLASS
CLAIM THAT AMAZON'S RACE-NEUTRAL COVID-19 POLICIES
VIOLATE SECTION 1981. ............................................................................ 15

     A.     Plaintiff Lacks Standing To Challenge Amazon's COVID-19
Policies..................................................................................................... 15

     B.     Challenges To Amazon's COVID-19 Policies Are Subject To The
Primary Jurisdiction Of The Occupational Safety And Health
Administration. ........................................................................................ 17

     C.     Plaintiff Fails To State A Plausible Claim Of Intentional
Discrimination Under Section 1981......................................................... 21

          1.     Plaintiff Does Not Plausibly Allege Intentional Race
Discrimination............................................................................. 22

          2.     Plaintiff Does Not Plausibly Allege Discrimination
Concerning Any Activity Enumerated In Section 1981. ............. 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AFL-CIO*,
    2020 WL 3125324 (D.C. Cir. June 11, 2020) ........................................................................19

*Ahmad v. White Plains City Sch. Dist.*,
    2019 WL 3202747 (S.D.N.Y. July 16, 2019) ..........................................................................7

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) ....................................................................................................16

*Anderson v. State of New York, Office of Court Admin. of Unified Court Sys.*,
    614 F. Supp. 2d 404 (S.D.N.Y. 2009) ....................................................................................25

*Antonmarchi v. Consol Edison Co of N.Y.*,
    2008 WL 4444609 (S.D.N.Y. Sept. 29, 2008) ......................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................5, 6, 9, 10

*Ass'n of Car Wash Owners Inc. v. City of New York*,
    911 F.3d 74 (2d Cir. 2018) ....................................................................................................13

*Batista v. Union of Needleworkers*,
    2000 WL 1760923 (S.D.N.Y. Nov. 30, 2000) ......................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................................5, 7, 8

*Bell v. McRoberts Protective Agency, Inc.*,
    2016 WL 7192083 (S.D.N.Y. Dec. 12, 2016) ......................................................................10

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*,
    111 F. Supp. 3d 459 (S.D.N.Y. 2015) ....................................................................................17

*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012) ....................................................................................................25

*Burgis v. N.Y.C. Dep't of Sanitation*,
    798 F.3d 63 (2d Cir. 2015) ....................................................................................................24

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011) ....................................................................................................15

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Callahan v. Consol. Edison Co. of N.Y.*,
    187 F. Supp. 2d 132 (S.D.N.Y. 2002) ................................................................11, 12

*Cardwell v. Davis Polk & Wardwell LLP*,
    2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) .......................................................6, 7

*Carter v. Verizon*,
    2015 WL 247344 (S.D.N.Y. Jan. 20, 2015) ...........................................................9

*Cocca-Rau v. Standard Ins. Co.*,
    2020 WL 4207442 (S.D.N.Y. July 22, 2020) ........................................................22

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ......................................................................................6, 22

*Cornetta v. Town of Highlands*,
    434 F. Supp. 3d 171 (S.D.N.Y. 2020) ....................................................................12

*Deravin v. Kerik*,
    335 F.3d 195 (2d Cir. 2003) .................................................................................5

*Diaz v. City Univ. of N.Y.*,
    2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015) ......................................................10

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ...................................................................16

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006) ...........................................................................18, 19

*Forrester v. Corizon Health, Inc.*,
    752 F. App'x 64 (2d Cir. 2018) .............................................................................7

*Fouche v. St. Charles Hosp.*,
    64 F. Supp. 3d 452 (E.D.N.Y. 2014) ..............................................7, 10, 11, 12

*Frederick v. United Bhd. of Carpenters and Joiners of Am.*,
    2014 WL 5783045 (E.D.N.Y. Nov. 6, 2014) ........................................................8

*Fullwood v. Wolfgang's Steakhouse, Inc.*,
    2017 WL 377931 (S.D.N.Y. Jan. 26, 2017) .........................................................17

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Gaughan v. Rubenstein*,
   261 F. Supp. 3d 390 (S.D.N.Y. 2017)...................................................................11

*Gomez v. City of New York*,
   2014 WL 4058700 (S.D.N.Y. Aug. 14, 2014).......................................................23

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
   846 F.2d 848 (2d Cir. 1988)..................................................................................18

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir. 2000)....................................................................................23

*Gunther v. Capital One, N.A.*,
   703 F. Supp. 2d 264 (E.D.N.Y. 2010) ..................................................................16

*Haggood v. Rubin & Rothman, LLC*,
   2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014)................................................13, 23

*Harrison v. SUNY Downstate Med. Ctr.*,
   2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) .....................................................13

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*,
   471 F.3d 87 (2d Cir. 2006)..............................................................................13, 14

*Henry v. NYC Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)................................................................11, 25

*Hill v. Airborne Freight Corp.*,
   93 F. App'x 260 (2d Cir. 2004) ............................................................................23

*Hill v. City of New York*,
   2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ................................................15, 16

*Johnakin v. NYC Dep't of Corr.*,
   2013 WL 5519998 (E.D.N.Y. Sept. 30, 2013) .....................................................17

*Johnson v. City of New York*,
   2019 WL 4468442 (E.D.N.Y. Sept. 18, 2019) .....................................................23

*Kilpatrick v. Kondaveeti*,
   2017 WL 8777376 (S.D.N.Y. July 31, 2017) ......................................................24

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Kroeger v. L3 Technologies, Inc.*,
   2018 WL 1357363 (C.D. Cal. Mar. 15, 2018) ........................................................14

*Lastra v. Barnes & Noble Bookstore*,
   2012 WL 12876 (S.D.N.Y. Jan. 3, 2012) ...............................................................23

*Lauture v. Int'l Bus. Machs. Corp.*,
   216 F.3d 258 (2d Cir. 2000)....................................................................................24

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)....................................................................................22

*Lopez v. Flight Servs. & Sys., Inc.*,
   881 F. Supp. 2d 431 (W.D.N.Y. 2012) ..................................................................25

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................15

*Men of Color Helping All Soc'y, Inc. v. City of Buffalo*,
   529 F. App'x 20 (2d Cir. 2013) ........................................................................22, 23

*Moore v. City of New York*,
   2018 WL 1281809 (S.D.N.Y. Mar. 8, 2018) .........................................................13

*Moose Lodge No. 107 v. Irvis*,
   407 U.S. 163 (1972)...............................................................................................17

*Ochei v. Mary Manning Walsh Nursing Home Co., Inc.*,
   2011 WL 744738 (S.D.N.Y. Mar. 1, 2011) .............................................................9

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)...............................................................................................16

*Palmer v. Amazon.com, Inc.*,
   2020 WL 6388599 (E.D.N.Y. Nov. 2, 2020)......................................3, 17, 18, 19, 20

*Patterson v. County of Oneida*,
   375 F.3d 206 (2d Cir. 2004)...................................................................................24

*Raymond v. City of New York*,
   317 F. Supp. 3d 746 (S.D.N.Y. 2018)...................................................................24

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Reynolds v. Barrett*,
   685 F.3d 193 (2d Cir. 2012).........................................................................21

*Rubert v. King*,
   2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020)..........................................7

*Saidin v. N.Y.C. Dep't of Educ.*,
   498 F. Supp. 2d 683 (S.D.N.Y. 2007)....................................................10

*San Diego Bldg. Trades Council v. Garmon*,
   359 U.S. 236 (1959)...............................................................................14

*Savage v. Envirotest Sys. Corp.*,
   1996 WL 732551 (D. Conn. Dec. 13, 1996)..........................................14

*Shain v. Ellison*,
   356 F.3d 211 (2d Cir. 2004)..................................................................15

*Soloviev v. Goldstein*,
   104 F. Supp. 3d 232 (E.D.N.Y. 2015) .................................................7, 8

*St. Francis Coll. v. Al-Khazraji*,
   481 U.S. 604 (1987)...............................................................................21

*Stinnett v. Delta Air Lines, Inc.*,
   2019 WL 1493224 (E.D.N.Y. Mar. 31, 2019) ....................................7, 8

*Tassy v. Brunswick Hosp. Ctr., Inc.*,
   296 F.3d 65 (2d Cir. 2002)....................................................................18

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956).................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...........................................................................15, 16

*Williams v. N.Y.C. Dep't of Corr.*,
   2020 WL 509180 (S.D.N.Y. Jan. 30, 2020) .........................................23

*Williams v. Victoria's Secret*,
   2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ....................................9, 10

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Winston v. City of N.Y.*,
    2013 WL 4516097 (E.D.N.Y. Aug. 23, 2013).......................................24

*Yan v. Ziba Mode Inc.*,
    2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) .....................................10

*Zaniewska v. City of New York*,
    2013 WL 3990751 (E.D.N.Y. Aug. 5, 2013).......................................21

**Statutes**

28 U.S.C. § 660...........................................................................................12

29 U.S.C. § 157.....................................................................................13, 14

**Rules**

Fed. R. Civ. P. 8(a)(2)...............................................................................5

Fed. R. Civ. P. 23(b)(2)............................................................................16

**Other Authorities**

Executive Order on Protecting Worker Health and Safety (Jan. 21, 2021)...................................21

*Guidance For Determining Whether A Business Enterprise Is Subject To A*
    *Workforce Reduction Under Recent Executive Orders*, N.Y. Empire State
    Development (updated Oct. 10, 2020)..............................................2

Miriam Szapiro, Associate General Counsel, NLRB, Marek Bros. Drywall Co.,
    16-CA-258507 (July 20, 2020)................................................15

N.Y. Exec. Order No. 202.6..........................................................................2

OSHA, *Protecting Workers: Guidance on Mitigating and Preventing the Spread*
    *of COVID-19 in the Workplace* (Jan. 29, 2021)....................................21

Peter B. Robb, General Counsel, NLRB, Summaries of Advice Merit
    Determinations Related to Coronavirus Disease 2019 Issues (Sept. 18, 2020).....................15

## INTRODUCTION

Plaintiff Christian Smalls alleges that (a) while working for Defendant Amazon.com Services LLC ("Amazon") as a "management associate" "responsible for approximately 60 subordinates," he was exposed to a co-worker with COVID-19, (b) Amazon "direct[ed] him to leave the premises" and to "quarantine[ ] with pay," (c) he ignored this order and "return[ed] to the fulfillment center" to "lead a demonstration," and (d) Amazon promptly terminated his employment, explaining that he "violat[ed] its quarantine order and thereby jeopardiz[ed] the health and safety of other employees." Am. Compl. ¶¶ 8, 9, 13, 16, 27, 29. Plaintiff claims that his termination was retaliatory and racially discriminatory in violation of 42 U.S.C. § 1981 ("Section 1981") and the New York State and New York City Human Rights Laws. Plaintiff also seeks to represent a class of non-management "line workers," who, he claims, were provided with less-effective COVID-19 safety measures than management employees based on their race (even though he concedes that there were Caucasians and minorities in both groups).

Each of these flawed claims should be dismissed. Plaintiff's individual claims for retaliatory and race-based termination fail because Plaintiff's Amended Complaint offers the most plausible explanation for his termination: Plaintiff violated a quarantine order and Amazon terminated his employment because of his disregard for the safety of his co-workers. None of the allegations in the Amended Complaint allows a plausible inference that his employment was terminated because he engaged in any protected activity or because of his race.

The claims for retaliatory termination fail for several additional reasons. Plaintiff does not plausibly allege that he engaged in activity that is protected by Section 1981 or the state and local laws on which he relies. Complaints about "health and safety issues" are not protected activities under the relevant statutes. Even if Plaintiff subjectively believed that his complaints about COVID-19 safety precautions were protected opposition to race discrimination, he never alleges

that Amazon knew he was objecting on that basis.  The National Labor Relations Act ("NLRA") also preempts any state- or local-law claim that Amazon terminated Plaintiff's employment for organizing or engaging in concerted activities relating to employment policies.

Plaintiff's putative class claim under Section 1981 on behalf of "line workers" also fails for numerous reasons.  *First*, Plaintiff no longer works for Amazon, and therefore lacks standing to prospectively challenge policies that no longer apply to him, and he cannot seek retrospective relief because he never explains how he was injured or by what policies.  *Second*, as Judge Cogan recently held in dismissing similar claims brought by several of Plaintiff's former co-workers, the Occupational Safety and Health Administration ("OSHA") has primary jurisdiction over workplace health and safety claims.  *Third*, Plaintiff's claim fails on the merits because Plaintiff does not plausibly allege that race was the "but for" cause of the challenged policies or that those policies impaired rights protected by Section 1981.  To the contrary, Plaintiff alleges that Amazon's policies treated similarly situated minority and Caucasian employees the same.

The Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

Amazon is an essential business whose continued operation during the COVID-19 crisis allows Americans nationwide to obtain the supplies necessary to sustain their lives, protect their health, and adhere to stay-at-home guidelines.  *See* N.Y. Exec. Order No. 202.6; *Guidance For Determining Whether A Business Enterprise Is Subject To A Workforce Reduction Under Recent Executive Orders*, N.Y. Empire State Development (updated Oct. 23, 2020) (identifying "warehouse/distribution and fulfillment" as "essential services"), https://tinyurl.com/r5ga47p.

Amazon operates JFK8, a massive Amazon fulfillment center—"larger than fourteen football fields"—in Staten Island that employs several thousand employees.  *Palmer v. Amazon.com, Inc.*, 2020 WL 6388599, at *1 (E.D.N.Y. Nov. 2, 2020).  In *Palmer*, several JFK8

employees (including some who worked with Plaintiff) challenged Amazon's COVID-19 policies and asked the district court to issue an injunction dictating JFK8's workplace-safety practices.  *Id.*  Among other reasons, Judge Cogan dismissed the plaintiffs' claims under the primary-jurisdiction doctrine because OSHA, not the court, should decide "whether Amazon's workplace policies at JFK8 *adequately* protect the safety of its workers."  *Id.* at *6.  The plaintiffs' appeal in *Palmer* is pending.  *See Palmer v. Amazon.com, Inc.*, No. 20-3989 (2d Cir.).

As in *Palmer*, Plaintiff here alleges that the precautions Amazon had in place at JFK8 in March 2020 were inadequate to protect employees from COVID-19.[1]  Plaintiff alleges that he worked at JFK8 in a "management associate position" and "was responsible for approximately 60 subordinates."  Am. Compl. ¶ 8.  On March 24, 2020, an employee with whom Plaintiff "had had close contact tested positive for COVID-19."  *Id.* ¶ 9.  Accordingly, Plaintiff "request[ed] to be placed on quarantine" the next day, and on March 28 Amazon "direct[ed] him to leave the premises" and advised him that he "was quarantined with pay."  *Id.* ¶¶ 12, 13, 29.  Plaintiff initially obeyed this directive, and "did not work on March 29."  *Id.* ¶ 16.

But, as Plaintiff has admitted publicly, he "played Amazon."  Alie Pierce, *Meet Chris Smalls*, WeekenderNJ (Feb. 21, 2021), https://bit.ly/3qRBoLb.[2]  He "told [Amazon he] would go

---

[1] These allegations are meritless—Amazon has adopted state-of-the-art safety measures at JFK8 and its other facilities to protect its employees.  Indeed, the same day that Plaintiff violated his quarantine order and Amazon terminated his employment, the New York City Sheriff's Office conducted an unannounced inspection at JFK8, and then conducted a follow-up visit the next day.  The officials concluded that complaints about JFK8's compliance with COVID-19 guidelines were "baseless," and that Amazon's health and safety measures go "above and beyond" compliance requirements; the officials accordingly "reported back to the Mayor's Office" that "there were absolutely no areas of concern."  Decl. of Meghan Fitzgerald, Ex. T at 1, 3, *Palmer*, No. 20-cv-2468 (BMC), Dkt. 44-20 (E.D.N.Y. July 7, 2020) (email from Lt. Derek Skuzenski, Ph.D., New York City Sheriff's Office).  For purposes of a motion to dismiss, the Court may consider "matters of which judicial notice may be taken," *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 & n.3 (2d Cir. 2016), including court filings that are part of the "public record," *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a "complaint" filed in a different lawsuit "as a public record").

[2] The Court may take judicial notice of Plaintiff's public admissions in "media reports" and "press coverage."  *Staehr v. Hartford Servs. Grp., Inc.*, 547 F.3d 406, 424–25 (2d Cir. 2008); *see also Carcasole-Lacal v. Am. Airlines, Inc.*, 2003 WL 21525484, at *1 n.1 (E.D.N.Y. July 8, 2003) ("Judicial notice can be taken of facts from newspaper articles that are widely reported in the media.").

3

home and quarantine," *id.*, and he understood that a directive to "quarantine definitely means that" "you have to stay inside your house," PIX11 News, *Amazon Worker Speaks on Being Fired After Leading Warehouse Walkout*, (Apr. 1, 2020), https://tinyurl.com/2th8rzfk, at 3:20–3:45.  "But little did [Amazon] know that I was going to go home and start planning" a protest at JFK8 for the following "Monday, the busiest day at Amazon," at "lunch time," Plaintiff said, knowing that there would be "hundreds of workers" there at that time, Pierce, *supra*, and he "didn't give a damn" that he had been told not to "come back to the building," Camelot 331, *A Nationwide Walkout For Amazon Got This Man FIRED!*, (Apr. 24, 2020), https://tinyurl.com/yzabcrs8, at 10:20–10:32.

Thus, in violation of the quarantine directive, Plaintiff returned to JFK8 on March 30 "to lead a demonstration of workers in the parking lot."  Am. Compl. ¶ 16.  Plaintiff alleges that he had "concerns" that Amazon was not taking appropriate COVID-19 "precautions" and that he had raised "health and safety issues" with management.  *Id.* ¶¶ 14–25.  Although he alleges no details, Plaintiff asserts that non-management "line workers" were generally subject to less-effective COVID-19 precautions than "managers."  *Id.* ¶ 20.  According to Plaintiff, who is "African American," *id.* ¶ 2, most "line workers" were "African-Americans, Latino[,] or immigrants," and management "as a group" was "disproportionately Caucasian," *id.* ¶¶ 19–20.  Plaintiff "believed that management was indifferent to" the safety of "his subordinates, co-workers and their families because the large majority of them were African-Americans, Latino[,] or immigrants."  *Id.* ¶ 19.  But Plaintiff admits that there were Caucasian "line workers" as well as minority "managers."  *Id.* ¶¶ 19–23, 33, 38.  Even though Plaintiff's claims are based on alleged race discrimination, he never alleges that he told Amazon he thought its policies were racially discriminatory.

When Plaintiff returned to JFK8 despite the quarantine order and his potential exposure to COVID-19, Amazon terminated his employment.  Am. Compl. ¶ 27.  As Plaintiff alleges, Amazon

explained that Plaintiff had "violat[ed] its quarantine order and thereby jeopardiz[ed] the health and safety of other employees." *Id.*   According to Plaintiff, Amazon told him that "company managers had repeatedly warned [him] not to come to work and to maintain social distancing at the workplace and asserted that he violated both edicts." *Id.* ¶ 28.

Plaintiff filed this lawsuit in November 2020, Dkt. 1, and the following month filed the operative Amended Complaint, Dkt. 9.  Plaintiff asserts three claims.  First, he alleges that Amazon terminated his employment because of his race in violation of 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").   Am. Compl. ¶ 49.   Second, Plaintiff alleges that Amazon terminated his employment in retaliation for opposing Amazon's COVID-19 policies, in violation of the same three statutes.  *Id.* ¶ 47.  Third, Plaintiff alleges that JFK8's COVID-19 policies are intentionally racially discriminatory under Section 1981.  *Id*. ¶ 45.[3]  He brings this claim on behalf of a putative "class of African-American and Latina/o workers at [JFK8] subjected to inferior terms and conditions of employment." *Id.* at p. 10.  Plaintiff seeks damages and injunctive relief.  *Id*.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a court generally "must accept as true all of the allegations contained in a complaint," that rule is "inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  If the "well-pleaded facts do not permit the court to infer more than the mere

---

[3]  For the Section 1981 claims, the Amended Complaint cites "42 U.S.C. section 1981-a [sic]."  Presumably, Plaintiff meant 42 U.S.C. § 1981(a) (which grants "[a]ll persons . . . the same right . . . to make and enforce contracts"), rather than 42 U.S.C. § 1981a (which is the damages provision for Title VII).  If Plaintiff meant to bring a Title VII claim, then that claim would be barred for a number of reasons, including because he has not exhausted his administrative remedies.  *See, e.g.*, *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that requires a court "to draw on its judicial experience and common sense."  *Id.*

## ARGUMENT

**I.      THE COURT SHOULD DISMISS PLAINTIFF'S INDIVIDUAL CLAIMS THAT HE WAS DISCHARGED BECAUSE OF HIS RACE OR IN RETALIATION FOR PROTECTED ACTIVITY.**

Plaintiff fails to state a plausible discrimination or retaliation claim under Section 1981, the NYSHRL, or the NYCHRL, given that the actual, non-discriminatory reason that Plaintiff lost his job is clear from the face of the Amended Complaint:  He violated Amazon's directive to "quarantine[]" due to his exposure to COVID-19, thereby putting the health and safety of his co-workers at risk.  Am. Compl. ¶¶ 13, 24, 27–29.  Plaintiff fails to allege any facts suggesting that it is more plausible that he was fired because of his race or in retaliation for opposing discrimination.  *Id.* ¶ 47.  Plaintiff's retaliation claims fail for the additional reason that he did not engage in activity protected by Section 1981 or the state and local laws on which he relies.  His state and local law retaliation claims are also preempted by the NLRA.

### A.      Plaintiff Does Not Plausibly Allege That He Was Fired Because Of His Race Or Any Protected Activity.

Plaintiff's discrimination and retaliation claims must be dismissed because he fails to plausibly allege that discrimination or retaliation was the cause of his termination.  To state a race discrimination claim under Section 1981, the NYSHRL, or the NYCHRL, a plaintiff "must plausibly allege" that race "was causally linked to the adverse employment action."  *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *17 (S.D.N.Y. Oct. 24, 2020).  A plaintiff asserting race discrimination under Section 1981 must allege that "but for race, [he] would not

have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  The NYSHRL and the NYCHRL require the plaintiff to allege that race was a "motivating factor" for an adverse employment action.  *Cardwell*, 2020 WL 6274826, at *19–20.   Likewise, a plaintiff asserting retaliation must plead a "causal connection" between the protected activity and an adverse employment action.  *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014).  To plead a "causal connection," the plaintiff must plausibly allege that the retaliation was a "'but-for' cause of the employer's adverse action" under Section 1981 and the NYSHRL, *Cardwell*, 2020 WL 6274826, at *36, or a "motivating factor" of the adverse action under the NYCHRL, *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018).

Under the "plausibility standard," a plaintiff cannot establish causation in the face of an "obvious alternative explanation." *Twombly*, 550 U.S. at 567–68.  Thus, where a plaintiff's own allegations "strongly indicate" that he was fired "because of [his] own actions" rather than because of a discriminatory or retaliatory motive, a court should dismiss his claim that the real reason was unlawful. *Stinnett v. Delta Air Lines, Inc.*, 2019 WL 1493224, at *7, *9 (E.D.N.Y. Mar. 31, 2019), *aff'd*, 803 F. App'x 505 (2d Cir. 2020); *see also Rubert v. King*, 2020 WL 5751513, at *7 & n.7 (S.D.N.Y. Sept. 25, 2020) (dismissing Section 1981 discrimination and retaliation claims because of "[p]laintiff's express acknowledgement" in his pleading that his "altercation" with another employee "led to his termination"); *Ahmad v. White Plains City Sch. Dist.*, 2019 WL 3202747, at *6 (S.D.N.Y. July 16, 2019) (dismissing Section 1981 and NYSHRL discrimination claims where the plaintiff's complaint "identifie[d] a non-discriminatory basis for his termination"); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249–50, 252 (E.D.N.Y. 2015) (dismissing NYSHRL and NYCHRL discrimination and retaliation claims because the "Complaint itself states a basis for

[plaintiff's] termination that is independent from his race, gender, and national origin" and thus "indicates that his termination was the product of his actions rather than his race, gender, or national origin").

Here, Plaintiff's allegations fall far short of plausibly alleging that his race or any protected activity was a motivating factor—let alone the but-for cause—of his termination.  In fact, the Amended Complaint confirms that Amazon terminated his employment for a legitimate non-discriminatory and non-retaliatory reason.  According to Plaintiff's own allegations, Plaintiff "request[ed] to be placed on quarantine in light of his known [COVID-19] exposure," and Amazon "advised [Plaintiff] that he was quarantined with pay."  Am. Compl. ¶¶ 12–13.  Despite being specifically "direct[ed]" to "leave the premises" and to quarantine, Plaintiff ignored the quarantine order and returned to "the parking lot of the fulfillment center" two days later to lead "a public demonstration."  *Id.* ¶¶ 24, 29.  Amazon fired him within hours, explaining that Plaintiff had "violat[ed] [Amazon's] quarantine order" and had ignored Amazon's directive "to maintain social distancing at the workplace," "thereby jeopardizing the health and safety of other employees."  *Id.* ¶¶ 27, 28.  Courts have repeatedly held that an employee's violation of an employer's orders, policies, or rules is a legitimate reason for termination.  *See Frederick v. United Bhd. of Carpenters and Joiners of Am.*, 2014 WL 5783045, at *2–3 (E.D.N.Y. Nov. 6, 2014) (dismissing complaint that "suggest[ed] [plaintiff] was terminated" not due to her race but because of "insubordination and breach of security"); *Stinnett*, 2019 WL 1493224, at *7 (dismissing complaint that itself "pleads facts that strongly indicate [plaintiff] was fired not because of a discriminatory motive of the part of [defendant]," but because plaintiff "violat[ed] [defendant's workplace] policy"); *Soloviev*, 104 F. Supp. 3d at 250 (dismissing complaint that "itself states" that plaintiff's "violations" of employer's "policies" led to his termination).

Against the backdrop of the obvious, legitimate reason for the discharge, Plaintiff would need to allege particularly compelling facts to raise a plausible inference that the real reason was race discrimination or retaliation for protected activity.  *See Iqbal*, 556 U.S. at 681.  Instead, Plaintiff's discrimination claims boil down to the bare allegations that he "is African American" and that Amazon terminated his employment.  Am. Compl. ¶¶ 2, 27.  This does not come close to plausibly stating a discrimination claim under Section 1981, the NYSHRL, or the NYCHRL.  *See Carter v. Verizon*, 2015 WL 247344, at *5–6 (S.D.N.Y. Jan. 20, 2015) (dismissing NYSHRL and NYCHRL claims that "simply ma[de] vague, conclusory allegations" of actions that were "not connect[ed]" to protected category); *Ochei v. Mary Manning Walsh Nursing Home Co.*, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) (dismissing discrimination claims under Section 1981, the NYSHRL, and the NYCHRL for failing to make "a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's membership in a protected class").

Plaintiff's only allegation in support of his discrimination claim is his conclusory assertion that Amazon "conclude[ed] that as a black man, [Plaintiff] would serve as a 'weak spokesman' for these workers and that Amazon could elicit public support by making him the face of the movement opposing its discriminatory practices." Am. Compl. ¶ 49.  But the memorandum that Plaintiff quotes says nothing about his race, and Plaintiff pleads no other facts that establish that the memorandum's neutral characterization of Plaintiff as a "weak spokesperson" had anything to do with his race.  *Id.* ¶ 31.  Indeed, Plaintiff never even alleges that the author of the memorandum knew that Plaintiff was African American.

The memorandum also lacks any "causal nexus" to Plaintiff's termination.  *Williams v. Victoria's Secret*, 2017 WL 1162908, at *8–9 (S.D.N.Y. Mar. 28, 2017).  The memorandum was allegedly written a "few days *after*" Amazon fired Plaintiff.  Am. Compl. ¶ 31 (emphasis added).

Thus, the memorandum's statement that Plaintiff was a "weak spokesperson"—which is, on its face, race-neutral—cannot raise a plausible inference that Plaintiff was fired because of his race. *Williams*, 2017 WL 1162908, at *8–9; *see also Yan v. Ziba Mode Inc.*, 2016 WL 1276456, at *4–5 (S.D.N.Y. Mar. 29, 2016) (dismissing complaint because defendant's "remarks lack the requisite 'causal nexus' to" decision to terminate plaintiff's employment). And it certainly does not come close to overcoming the "more likely explanation[ ]" for Plaintiff's firing: that he endangered other employees by returning to work despite exposure to COVID-19. *Iqbal*, 556 U.S. at 681.

Plaintiff similarly fails to plead facts supporting an inference that he was fired in retaliation for speaking out against race discrimination, as opposed to his violation of Amazon's quarantine order. *Bell v. McRoberts Protective Agency, Inc.*, 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016). Plaintiff cannot maintain a claim for retaliatory termination unless he demonstrates that the protected activity *caused* the adverse employment action. *Fouche*, 64 F. Supp. 3d at 457. But Plaintiff's Amended Complaint simply asserts, without support, that Amazon terminated his employment because he "oppos[ed] such discriminatory practices." Am. Compl. ¶ 47. These "vague, conclusory" allegations of retaliation lack "factual detail describing" who "had knowledge" of his purported protected activity and "who actually engaged in the claimed retaliation," *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007), and so do not adequately plead the required "causal connection," *Diaz v. City Univ. of N.Y.*, 2015 WL 5577905, at *12 (S.D.N.Y. Sept. 22, 2015). Plaintiff thus fails to allege facts to support a plausible inference that retaliation—rather than Plaintiff's violation of the quarantine order—played *any* role in Amazon's decision to terminate his employment.

In short, none of Plaintiff's bare assertions of race discrimination or retaliation can overcome the obvious inference from the Amended Complaint—that he was fired because he

10

violated a quarantine order and risked exposing employees to COVID-19.  Thus, the Court should dismiss Plaintiff's individual claims that he was wrongfully discharged.

### B.   Plaintiff's Retaliation Claims Also Fail Because He Does Not Plausibly Allege That He Was Engaged In Any Protected Activity Known To Amazon.

Plaintiff's retaliation claims independently fail because Plaintiff does not plausibly allege that he was engaged in protected activity or that Amazon had knowledge of any purportedly protected activity.  To state a retaliation claim, Plaintiff must plausibly allege (1) that he was engaged in "protected activity"—*i.e.*, action taken to "protest or oppose statutorily prohibited discrimination"—and (2) that his employer had "knowledge of the protected activity."  *Fouche*, 64 F. Supp. 3d at 457–58 (alteration omitted) (Section 1981); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 411 (S.D.N.Y. 2014) (NYSHRL); *Callahan v. Consol. Edison Co. of N.Y.*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) (NYCHRL).

Plaintiff alleges merely that he complained to "management" about "health and safety issues"—for example, allegedly inadequate "cleaning" and "sanitiz[ing]" at JFK8.  Am. Compl. ¶¶ 21–25.  But "health and safety" complaints are not "protected activity" under Section 1981, the NYSHRL, or the NYCHRL, and Plaintiff does not allege he ever connected his complaints about "health and safety issues" to race.  Plaintiff's complaints thus do not qualify as protected activity and cannot serve as the basis for a retaliation claim.  *See Antonmarchi v. Consol. Edison Co. of N.Y.*, 2008 WL 4444609, at *12 (S.D.N.Y. Sept. 29, 2008) ("retaliation for safety complaints is not an actionable protected activity under" Section 1981, the NYSHRL, or the NYCHRL), *aff'd*, 514 F. App'x 33 (2d Cir. 2013); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 418 (S.D.N.Y. 2017) (alleged complaints about "unsanitary" workplace conditions were not "protected activity" under the NYSHRL or the NYCHRL); *cf. Fouche*, 64 F. Supp. 3d at 458 (plaintiff's "complaint regarding the Defendant's policies and practices concerning defibrillators that allegedly

endangered patients" did not "constitute protected activity" under Section 1981).[4]

At most, Plaintiff alleges that he *subjectively* believed that by raising "health and safety issues," Am. Compl. ¶ 21, he was actually "oppos[ing] practices which discriminated against minority workers . . . due to their race/ethnicity," *id.* ¶ 26; *see also id.* ¶ 19.   Plaintiff's uncommunicated, subjective motivations are insufficient to elevate his conduct to protected activity.   "[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."   *Fouche*, 64 F. Supp. 3d at 458.   Rather, to constitute "protected activity," an "employee's complaint must be sufficiently pointed to be reasonably understood as a complaint of discrimination."   *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020).   In other words, "a plaintiff must allege that her employer was on notice that her complaints were about statutorily prohibited discrimination, not just general unsatisfactory or unfair conduct."   *Id.* (alterations omitted); *accord Fouche*, 64 F. Supp. 3d at 458.

Plaintiff's subjective (and erroneous) belief that Amazon's COVID-19 policies were based on intentional race discrimination is insufficient.   Plaintiff does not allege that he shared with Amazon his belief that Amazon's COVID-19 policies were racially discriminatory.   Nor does he allege any other facts that would allow a plausible inference that Amazon was "on notice" that his complaints about workplace safety were actually complaints about race discrimination.   *Callahan*, 187 F. Supp. 2d at 138 n.39.   To the contrary, Plaintiff repeatedly alleges that his protests were focused on "health and safety issues":   that he "raised health and safety issues" in a "meet[ing] with management," Am. Compl. ¶¶ 21–23, and that he "demanded" that Amazon close JFK8 "until it could be deeply cleaned and sanitized," "not[ing]" that the contractor responsible for the facility, in Plaintiff's opinion, had "giv[en] short shrift to the cleaning process," *id.* ¶¶ 24–25; *see also*

---

[4]  The OSH Act protects safety whistleblowers from retaliatory discharge and provides them with the opportunity to seek relief from the Labor Secretary, *see* 29 U.S.C. § 660(c), but Plaintiff never sought recourse with the Secretary.

Pierce, *supra* ("our basic demand" was for the "building to be closed, cleaned and professionally sanitized before we return").  Plaintiff's vague claim that he subjectively "opposed" unspecified discriminatory "practices," Am. Compl. ¶ 26, is therefore insufficient to state a claim for retaliatory discharge, *see, e.g.*, *Moore v. City of New York*, 2018 WL 1281809, at *5 (S.D.N.Y. Mar. 8, 2018) (dismissing Section 1981 retaliation claims for failure to allege that employer "was aware, or should have been aware, that [employee's action] had anything to do with perceived racial" discrimination); *see also, e.g.*, *Harrison v. SUNY Downstate Med. Ctr.*, 2017 WL 4326507, at *7 (E.D.N.Y. Sept. 25, 2017) ("Even if [plaintiff] believed that she was being discriminated against because of her gender, nothing in her behavior, as described in her complaint, would have allowed her employer to reasonably have understood that [plaintiff's] opposition was directed at [statutorily prohibited] conduct." (alteration omitted)); *Haggood v. Rubin & Rothman, LLC*, 2014 WL 6473527, at *14 (E.D.N.Y. Nov. 17, 2014) ("[T]he amended complaint is bereft of any factual allegations from which it may reasonably be inferred that defendants knew, or should have known, that those complaints were about a racially discriminatory employment practice.").

### C.   Plaintiff's State- And Local-Law Retaliation Claims Are Preempted By The National Labor Relations Act.

Plaintiff's state- and local-law claims for retaliatory termination under the NYSHRL and the NYCHRL fail for the independent reason that they are preempted by the NLRA.  Section 7 of the NLRA protects employees who "engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.  This provision preempts state and local law concerning activity that the federal law even "arguably protects or prohibits." *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 81 (2d Cir. 2018); *see also Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 95 (2d Cir. 2006) (states cannot "augment[] the remedies provided by" Section 7).  "It is essential to the [NLRA's] administration" that

"determinations" regarding whether a "particular activity" is governed by the NLRA "be left in the first instance to the National Labor Relations Board [('NLRB')]." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45 (1959). Any "uncertainty" about the NLRA's application is for the NLRB to resolve. *Healthcare Ass'n*, 471 F.3d at 101.

Here, Plaintiff alleges that he engaged in "concerted activity" by "lead[ing] a demonstration of workers," and that Amazon terminated his employment because he "organiz[ed] workers" to protest Amazon's COVID-19 policies, Am. Compl. ¶¶ 16–17, 47. Those are quintessential NLRA allegations; Plaintiff has even employed NLRA terms of art. *See* 29 U.S.C. § 157 (protecting workers' rights to engage in "concerted activities" relating to "self-organization"); *Savage v. Envirotest Sys. Corp.*, 1996 WL 732551, at *3 (D. Conn. Dec. 13, 1996) (collecting cases for the proposition that "alleged retaliation against union organization efforts" is "preempted by sections 7 and 8 of the National Labor Relations Act"). The NLRB has "exclusive jurisdiction" over claims alleging that an employee was "terminated . . . in retaliation" for an attempt to organize. *Batista v. Union of Needleworkers*, 2000 WL 1760923, at *4 (S.D.N.Y. Nov. 30, 2000); *see also, e.g.*, *Kroeger v. L3 Techs., Inc.*, 2018 WL 1357363, at *3 (C.D. Cal. Mar. 15, 2018) ("[C]ourts have repeatedly dismissed retaliation and common law claims predicated on alleged interference with NLRA-protected activities."). Thus, the NLRA preempts Plaintiff's attempt to bring a state-law challenge based on these allegations.

The NLRB has taken an active role in enforcing the rights of employees who protest working conditions that they perceive as insufficient to protect against COVID-19. The NLRB's General Counsel issued a memorandum describing its investigation of an employer's actions "after a group of employees protested" an "alleged failure to provide personal protective equipment (PPE), such as gloves, masks and hand sanitizer, and to enforce social distancing guidelines."

Peter B. Robb, General Counsel, NLRB, Summaries of Advice Merit Determinations Related to Coronavirus Disease 2019 Issues at 2 (Sept. 18, 2020), https://tinyurl.com/ctsvjacp.  The NLRB directed its regional office to "issue [a] complaint absent settlement alleging that the Employer violated Section 8(a)(1) of the [NLRA] by unlawfully discharging the employee who led protected concerted efforts to secure PPE and to enforce social distancing."  *Id*.  An earlier communication concluded that an employee "engage[d] in protected concerted activity when [he] raised concerns about the lack of available resources for employees to wash or sanitize their hands as a precaution against the growing COVID-19 pandemic."  Miriam Szapiro, Associate General Counsel, NLRB, Marek Bros. Drywall Co., 16-CA-258507 (July 20, 2020), https://tinyurl.com/y6pq4hxm.

Thus, Plaintiff's state- and local-law claims for retaliation are preempted by the NLRA.

## II.    THE COURT SHOULD DISMISS PLAINTIFF'S PUTATIVE CLASS CLAIM THAT AMAZON'S RACE-NEUTRAL COVID-19 POLICIES VIOLATE SECTION 1981.

### A.  Plaintiff Lacks Standing To Challenge Amazon's COVID-19 Policies.

To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must have suffered an "injury in fact" that is fairly traceable to the challenged action, and likely redressable by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  A plaintiff must "demonstrate standing for each claim and form of relief sought."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

Plaintiff "lack[s] standing to seek injunctive" relief because he is "no longer employed by [Amazon]."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364–65 (2011); *see Hill v. City of New York*, 2019 WL 1900503, at *3 (E.D.N.Y. Apr. 29, 2019) ("[F]ormer employees do not have standing to seek injunctive relief against their former employer.").  Plaintiff seeks an injunction "requiring defendant to provide equal terms and conditions of employment to" line workers.  Am. Compl. at pp. 9–10.  But as a former employee who is not currently working at JFK8, "there is no

prospect that [Plaintiff] will be injured in the future" by the allegedly unequal COVID-19 measures that he challenges. *Hill*, 2019 WL 1900503, at *3. Plaintiff does not seek reinstatement, so to demonstrate that he has "standing to seek injunctive relief," he "cannot rely on past injury"; rather, he "must show a likelihood that he will be injured in the future"—which he cannot do. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (alteration omitted).

Plaintiff's lack of standing to seek injunctive relief also dooms his class allegations. Plaintiff "seeks certification pursuant to [FRCP] 23(b)(2)." Am. Compl. at p. 10. Under Rule 23(b)(2), a class plaintiff must show that the defendant "has acted . . . on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Thus, "the validity of a (b)(2) class depends" on whether the class members—or, even more importantly, class representatives—"have [a] claim for injunctive or declaratory relief at all." *Wal-Mart Stores*, 564 U.S. at 364–65; *see id.* (noting that "backpay claims" seeking damages "should not be certified under Rule 23(b)(2) at all"); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) ("class representatives must have standing"). Because Plaintiff lacks standing to seek injunctive relief regarding Amazon's COVID-19 policies, he cannot bring Rule 23(b)(2) class claims against those policies. *See Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 275 (E.D.N.Y. 2010) (dismissing class claim where named plaintiff did "not have standing" to bring it and rejecting plaintiff's request to defer the issue to class certification).

Nor has Plaintiff "allege[d] facts that affirmatively and plausibly suggest that [he] has standing" to seek damages for his claim challenging Amazon's COVID-19 policies. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam). Plaintiff alleges that Amazon "attended to" the health of "line workers" with less diligence than that of "managers."

Am. Compl. ¶ 20.  But Plaintiff does not allege that he was a "line worker"; instead, he asserts that he was a "management associate" "responsible for approximately 60 subordinates." *Id*. ¶ 8.  A plaintiff may "seek redress for injuries done to him, but may not seek redress for injuries done to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972); *Johnakin v. NYC Dep't of Corr.*, 2013 WL 5519998, at *10 (E.D.N.Y. Sept. 30, 2013) (plaintiff lacked standing to bring § 1983 claim challenging inmate-visitation policy that terminated visits when inmate or visitor used the bathroom, where plaintiff did not allege that he "ever had a visit cut short for this reason").

More fundamentally, the Amended Complaint lacks any "particularized allegations" showing what specific COVID-19 policies harmed Plaintiff, or even explaining how he was injured. *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 481–82 (S.D.N.Y. 2015).  Although the Amended Complaint vaguely references COVID-19 policies that allegedly troubled Plaintiff, Am. Compl. ¶ 17, it never explains how these policies caused him any concrete injury.  In fact, it is unclear if Plaintiff is even arguing that he suffered an injury as a result of Amazon's COVID-19 policies.  Because the Amended Complaint lacks "well-pled allegations describing [any] injuries" Plaintiff suffered as a result of Amazon's COVID-19 policies, he lacks standing to seek damages in connection with his claim against those policies.  *Fullwood v. Wolfgang's Steakhouse, Inc.*, 2017 WL 377931, at *6 (S.D.N.Y. Jan. 26, 2017) (dismissing claim based on "conclusory allegation that Plaintiff was 'damaged' by Defendants' conduct"); *Bloomingburg*, 111 F. Supp. 3d at 481–82 (plaintiffs provided "no detail on the effects" of challenged policies and did "not explain" how they caused any "concrete hardships or damages").[5]

### B.    Challenges To Amazon's COVID-19 Policies Are Subject To The Primary Jurisdiction Of The Occupational Safety And Health Administration.

Plaintiff's claims should also be dismissed under the primary-jurisdiction doctrine.  Not

---

[5] Any claims for past injury related to Amazon's COVID-19 policies would be barred by workers' compensation exclusivity. *See Palmer*, 2020 WL 6388599, at *10–11.

only does Plaintiff challenge Amazon's workplace-safety policies, Am. Compl. ¶¶ 17, 24–25, 30, 33, 38, he also asks this Court to force Amazon to implement his preferred COVID-19 measures, demanding "injunctive relief" dictating the day-to-day operations of Amazon's JFK8 facility, *id.* at p. 10. As Judge Cogan recently held, however, claims of this sort should be dismissed under the primary-jurisdiction doctrine because Congress has entrusted OSHA with primary jurisdiction over the regulation of workplace safety. *Palmer*, 2020 WL 6388599, at *4–7.

The primary-jurisdiction doctrine is "a version of the administrative exhaustion requirement" under which a district court dismisses or stays a case to allow an administrative agency in the first instance to resolve issues that "have been placed within [its] special competence." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). The purpose of the doctrine is to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006). "Recourse to the doctrine of primary jurisdiction is thus appropriate whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.*

"No fixed formula exists" for the doctrine's application. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 65 (1956). "Rather, in every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application"; those purposes "are twofold: the desire for uniformity and the reliance on administrative expertise." *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 68 (2d Cir. 2002) (alteration omitted). To answer this question, courts in this Circuit focus on four factors: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue

is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis*, 443 F.3d at 82–83.  Courts also "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 83.

In *Palmer*, the court considered claims similar to Plaintiff's involving the very same Amazon fulfillment center, and concluded that the primary-jurisdiction doctrine applied because those claims were subject to OSHA's special competence.   2020 WL 6388599, at *7.  The court recognized that OSHA is "specifically charged with regulating health and safety in the workplace" and "has the primary responsibility for setting and enforcing standards . . . to assure safe and healthful working conditions." *Id*. at *5.  OSHA "has exercised its discretion in determining how to proceed in the face of an evolving pandemic fraught with uncertainty" by using its "existing regulatory tools at its disposal 'to ensure that employers are maintaining hazard-free work environments.'" *Id.* (quoting *In re AFL-CIO*, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020)). Thus, as of October 2020, OSHA had "opened over 1,000 federal inspections" into COVID-19-related complaints, and had "issued around 150 citations." *Id.* at *6.

The *Palmer* plaintiffs' claims, the court concluded, were squarely within OSHA's primary responsibility, given that they sought injunctions regulating JFK8's health and safety policies. 2020 WL 6388599, at *6.  The plaintiffs were not simply seeking "the application of law to disputed facts"; rather, those plaintiffs were asking the court to determine which workplace policies would "*adequately* protect the safety of [JFK8] workers during the COVID-19 pandemic" and to "implement and oversee new workplace policies," matters "requiring both technical and policy expertise." *Id.*  These "claims and proposed injunctive relief," the court rightly concluded, "go to the heart of OSHA's expertise and discretion." *Id.*

That court further found that "[t]he risk of inconsistent rulings further weighs in favor of applying the doctrine of primary jurisdiction." *Palmer*, 2020 WL 6388599, at *6. If courts were forced to craft and impose their own workplace-safety practices on individual businesses, or even (as here) individual warehouses, industries across the country could be subject "to vastly different, costly regulatory schemes in a time of economic crisis." *Id.* Deferring to OSHA, on the other hand, "would be more flexible and could ensure uniformity." *Id.*

The *Palmer* court further noted that those plaintiffs' failure to make an application to OSHA did not weigh against applying the primary-jurisdiction doctrine because they had made the decision "to pursue their claims in federal court rather than apply for relief from OSHA." 2020 WL 6388599, at *6. And finally, not only do "the advantages of applying the doctrine outweigh the potential costs of delay," but "at least part of the responsibility for that delay lies with plaintiffs." *Id.* at *7. The district court accordingly dismissed the case in favor of OSHA's primary jurisdiction over the plaintiffs' claims.

The same outcome applies here. Judges should not be asked to review a cold record and render findings about how to safely operate a 1.5-million-square-foot fulfillment center, sight unseen, in the midst of an evolving pandemic. It is difficult to imagine a task less suited to the judiciary. Fortunately, Congress created an expert agency with the investigative tools and resources to perform this function. Plaintiff's failure to avail himself of that resource is inexcusable, and his claims—rooted in the allegation that Amazon's COVID-19 safety policies were somehow inadequate—should be dismissed in favor of OSHA's primary jurisdiction.

Contrary to Plaintiff's allegations, Amazon has implemented state-of-the-art, industry-leading safety measures for *all* of its associates without regard to their race. *See supra* n.1. If Plaintiff has any disputes regarding those measures, OSHA is the agency with the relevant

expertise and jurisdiction.  Indeed, deference to OSHA under the primary-jurisdiction doctrine is even more important now given that President Biden recently issued an Executive Order directing the Secretary of Labor and head of OSHA to issue "revised guidance to employers on workplace safety during the COVID-19 pandemic," to "consider whether any emergency temporary standards on COVID-19 . . . are necessary" and "issue them by March 15, 2021," and to "launch a national program" regarding OSHA enforcement.  Executive Order on Protecting Worker Health and Safety § 2(a)–(d) (Jan. 21, 2021), https://tinyurl.com/y6lv6yq9.  Pursuant to this Executive Order, OSHA has issued guidance making clear that "[a]ll of OSHA's standards that apply to protecting workers from infection remain in place," including "requirements for PPE, respiratory protection, sanitation, protection from bloodborne pathogens," and the requirement "under the General Duty Clause" to "provide a safe and healthful workplace that is free from recognized hazards."  OSHA, *Protecting Workers:  Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace* (Jan. 29, 2021), https://www.osha.gov/coronavirus/safework (citations omitted).  This Court should therefore apply the primary-jurisdiction doctrine and dismiss all of Plaintiff's claims that challenge Amazon's workplace-safety policies and seek to dictate new practices.

### C.   Plaintiff Fails To State A Plausible Claim Of Intentional Discrimination Under Section 1981.

Although Plaintiff's lack of standing and the primary-jurisdiction doctrine provide independent bases for dismissal of Plaintiff's Section 1981 challenge to Amazon's COVID-19 policies, Plaintiff's claims also fail on the merits.  In Plaintiff's response to Amazon's letter requesting a pre-motion conference, he appears to argue that his Section 1981 claim is based on "a disparate impact analysis."  Dkt. 18, at 3.  But Section 1981 applies only to *intentional* discrimination; Plaintiff cannot bring a disparate-impact claim.  *See, e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012).  To state a claim under Section 1981, a plaintiff must allege that:

"(1) he is a member of a racial minority; (2) the defendant *intended* to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Cocca-Rau v. Standard Ins. Co.*, 2020 WL 4207442, at *8 (S.D.N.Y. July 22, 2020) (emphasis added). To plead discriminatory intent, a plaintiff asserting race discrimination under Section 1981 must allege that "race was a but-for cause of [his] injury." *Comcast*, 140 S. Ct. at 1014.[6]

### 1.  Plaintiff Does Not Plausibly Allege Intentional Race Discrimination.

Nothing in the Amended Complaint plausibly suggests that Amazon's COVID-19 policies intentionally discriminated on the basis of race. Under Section 1981, "adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). To be similarly situated, the employees must be similar "in all material respects." *Id.*

Plaintiff alleges that Amazon treated *all* "line workers" differently than *all* "managers," regardless of their race or ethnicity. Amazon purportedly "attend[ed] with greater diligence to the health and safety of managers," who, Plaintiff contends, "were *disproportionately* Caucasian," and "failed to aggressively implement policies" to protect "line staff," the "*preponderance of whom*," he alleges, were "African American, Latino/a or recently arrived immigrants." Am. Compl. ¶¶ 20, 33 (emphases added). But Plaintiff concedes that some "line workers" were Caucasian, *id.* ¶¶ 19, 23, and that some "managers" were minorities, *id.* ¶ 20; indeed, Plaintiff characterizes himself as a racial minority who served as "management," *id.* ¶ 8. Thus, by Plaintiff's own admission, minority "line workers" were not "treated differently than similarly situated white [line workers]." *Men of Color Helping All Soc'y, Inc. v. City of Buffalo*, 529 F. App'x 20, 26–27 (2d Cir. 2013).

---

[6]  To the extent that Plaintiff purports to bring a Section 1981 claim based on national-origin discrimination, *see* Am. Compl. ¶ 33, the claim fails for the additional reason that Section 1981 does not apply to discrimination based on national origin, *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

That admission alone prevents Plaintiff from bringing a claim under Section 1981.  *See Men of Color*, 529 F. App'x at 26–27; *see also Hill v. Airborne Freight Corp.*, 93 F. App'x 260 (2d Cir. 2004).   In *Hill*, the plaintiff had no viable Section 1981 claim because he was "not disciplined more harshly than similarly situated white employees," notwithstanding evidence of "reprehensible" "racial animus," 93 F. App'x at 262, which of course is lacking here.  Likewise, in *Men of Color*, the Second Circuit held that "even if" a disproportionate effect were sufficient to show that a defendant had a discriminatory motive, the plaintiffs' claims still failed because they had not shown "that any one of them was treated differently than similarly situated white firefighters."  529 F. App'x at 27; *see also, e.g.*, *Gomez v. City of New York*, 2014 WL 4058700, at *4 (S.D.N.Y. Aug. 14, 2014) (dismissing Section 1981 discrimination claim where complaint "does not allege that Plaintiff was treated any differently from similarly situated NYPD officers outside of the protected class"); *Lastra v. Barnes & Noble Bookstore*, 2012 WL 12876, at *6 (S.D.N.Y. Jan. 3, 2012) (dismissing Section 1981 discrimination claim where "[t]he Complaint does not include any allegation that similarly situated non-Latinos were treated differently").

Nor can any purported difference in Amazon's treatment of "line workers" and "managers" support an inference of intentional race discrimination.  Am. Compl. ¶ 20.  To "rais[e] an inference of employment discrimination" based on less favorable treatment "than a similarly situated employee outside his protected group," a plaintiff "must identify comparators and show that the comparators are 'similarly situated in all material respects.'"  *Williams v. N.Y.C. Dep't of Corr.*, 2020 WL 509180, at *4 (S.D.N.Y. Jan. 30, 2020) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000)).   Plaintiff does not—and cannot—allege that "line workers" and "managers" are "similarly situated in all material respects."  *Id.*; *Johnson v. City of New York*, 2019 WL 4468442, at *10, *13 (E.D.N.Y. Sept. 18, 2019) (plaintiff's co-worker "was not similarly

situated because he held a different job" in a "higher position"); *Haggood*, 2014 WL 6473527, at *12 (plaintiffs and their "supervisors" are "not similarly situated"); *Winston v. City of New York*, 2013 WL 4516097, at *2 (E.D.N.Y. Aug. 23, 2013) (allegation that plaintiff was "treated differently" from her "superiors" fails to state discrimination claim because plaintiff was not "similarly situated" or "subject to the same workplace standards" as her "superiors").

Nor can Plaintiff manufacture an inference of intentional discrimination from his allegation that a "preponderance" of non-management employees were minorities.   Am. Compl. ¶ 33. Plaintiff's vague allegations in the Amended Complaint about the proportions of "line workers" and "managers" of certain races do not come close to "mak[ing] other plausible non-discriminatory explanations" for Amazon's COVID-19 policies "very unlikely."   *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015); *see also Raymond v. City of New York*, 317 F. Supp. 3d 746, 762 (S.D.N.Y. 2018).   Accordingly, any alleged differences in Amazon's treatment of "line workers" and managers fail to raise an inference of discrimination.

### 2. Plaintiff Does Not Plausibly Allege Discrimination Concerning Any Activity Enumerated In Section 1981.

Plaintiff also does not plausibly allege that the supposed race discrimination concerned "activities enumerated in § 1981."   *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).   Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship."   *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).   To "state a claim under § 1981," a plaintiff must "allege[] facts, as opposed to legal conclusions, showing that . . . he was engaged in any of the activities enumerated in the statute."   *Kilpatrick v. Kondaveeti*, 2017 WL 8777376, at *2 (S.D.N.Y. July 31, 2017).

Plaintiff alleges no facts demonstrating any impairment of rights protected by Section 1981 beyond his naked legal conclusion that Amazon "burdened [his] right to contract on terms equal

to those defendant offered Caucasian employees, so violating 42 U.S.C. section 1981-a [sic]." Am. Compl. ¶ 45. That conclusory assertion does not come close to stating a plausible claim. *See Anderson v. State of New York, Office of Court Admin. of Unified Court Sys.*, 614 F. Supp. 2d 404, 425 & n.191 (S.D.N.Y. 2009) (plaintiff's conclusory "section 1981 claim fail[ed] as a matter of law" because plaintiff "ha[d] not demonstrated that the alleged discrimination concerned one or more of the activities enumerated in the statute").

Moreover, Plaintiff admits that *all* "line workers," regardless of race, were subject to the same COVID-19 policies. *See supra* at 22. Belonging to a category of workers subject to different policies than a separate category of workers is not an actionable "adverse change in the terms and conditions of employment." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).[7]

Finally, even if different COVID-19 policies for different categories of workers were somehow actionable under Section 1981, the Amended Complaint is still devoid of any specific allegations about what protections, if any, Amazon purportedly provided Caucasian employees but not minority "line workers." Plaintiff alleges only that Amazon was "attending with greater diligence to the health and safety of managers," who he claims were "disproportionately Caucasian." Am. Compl. ¶ 20. He offers no examples of the alleged "greater diligence to the health and safety of managers," nor does he identify any safety policies that applied differently to "managers," as opposed to "line workers." *Id*. These "vague allegation[s]" fail to state a plausible claim that Plaintiff suffered "an adverse employment action." *Henry*, 18 F. Supp. 3d at 405–06.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

---

[7] Plaintiff's termination cannot satisfy the adverse-employment-action requirement for the purposes of his claim challenging Amazon's COVID-19 policies because he cannot borrow an adverse action from one context and apply it to different claims. *See Lopez v. Flight Servs. & Sys., Inc.*, 881 F. Supp. 2d 431, 441 (W.D.N.Y. 2012) (plaintiff's firing connected to complaining about a no-Spanish policy "is not an adverse employment action as to th[e] claim" "alleg[ing] unequal working conditions").

Dated:  March 5, 2021                    Respectfully submitted,

                                         /s/ Jason C. Schwartz
                                         Jason C. Schwartz*
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036
                                         (202) 955-8500
                                         jschwartz@gibsondunn.com

                                         Mylan L. Denerstein
                                         Gabrielle Levin
                                         Zainab N. Ahmad
                                         GIBSON, DUNN & CRUTCHER LLP
                                         200 Park Avenue
                                         New York, NY 10166-0193
                                         (212) 351-4000
                                         mdenerstein@gibsondunn.com
                                         glevin@gibsondunn.com
                                         zahmad@gibsondunn.com

                                         *Attorneys for Defendant Amazon.com Services
                                         LLC*

                                         * Admitted *pro hac vice*