UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CHRISTIAN SMALLS, on his own behalf and                    20-CV-5492 (RPK)(CLP)

on behalf of a class of similarly situated African

American and Latina/o workers,

                               Plaintiff,

vs.

AMAZON.com SERVICES LLC,

                               Defendant.

------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS


MICHAEL H. SUSSMAN, ESQ.
SUSSMAN & ASSOCIATES
1 Railroad Ave, Suite 3
PO Box 1005
Goshen, NY 10924
*Attorneys for Plaintiff*


Dated: April 5, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT ...............................................................................................................................4

     POINT I: MOTION TO DISMISS STANDARDS .............................................................4

     POINT II: PLAINTIFF HAS SUFFICIENTLY ALLEGED RACIAL
     DISCRIMINATION .........................................................................................................5

     POINT III: PLAINTIFF HAS SUFFICIENTLY ALLEGED
     PROTECTED ACTIVITY.................................................................................................9

     POINT IV: PLAINTIFF'S STATE- AND LOCAL-LAW RETALIATION
     CLAIMS ARE NOT PREEMPTED BY THE NATIONAL LABOR
     RELATIONS ACT ...........................................................................................................14

     POINT V: THE COURT SHOULD DEFER RULING ON CLASS
     CERTIFICATION UNTIL IT RESOLVES THIS MOTION TO DISMISS ....................15

CONCLUSION............................................................................................................................17

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Antonmarchi v. Consol Edison Co. of N.Y.*,
  2008 WL 4444609 (S.D.N.Y. Sept 29, 2008)................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................4

*Ass'n of Car Wash Owners, Inc v. City of New York*,
  911 F.3d 74 (2d Cir. 2018)............................................................................................14

*Bell Atl. Corp. v. Twombley*,
  550 U.S. 544 (2007).........................................................................................................4

*CBOCS W, Inc. v. Humphries*,
  553 U.S. 442 (2008).........................................................................................................9

*Comcast Corp. v. Ass'n of African American-Owned Media*,
  140 S.Ct. 1009 (2020)......................................................................................................6

*Gaughan v. Rubenstein*,
  261 F. Supp. 3d 390 (S.D.N.Y. 2017)...........................................................................10

*Hayes v. Cablevision Svs. New York City Corp.*,
  2012 WL 1106850 (E.D.N.Y. March 31, 2012) .............................................................9

*Heckman v. Town of Hempstead*,
  568 F.App'x. 41 (2d Cir. 2014) ....................................................................................14

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010)............................................................................................9

*Hill v. Airborne Freight Corp.*,
  93 F. App'x 260 (2d Cir. 2004) ......................................................................................8

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)........................................................................................5, 8

*Men of Color Helping All Soc'y, Inc. v. City of Buffalo*,
    529 F. App'x 20 (2d Cir. 2013) ......................................................................................8

*Palmer v. Amazon, Inc.*,
    2020 WL 6388599 (E.D.N.Y. November 2, 2020)........................................................16

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002)..........................................................................................4

*United States v. Yonkers Bd. of Educ.*,
    624 F. Supp. 1276 (S.D.N.Y.1985)................................................................................7

*Vega v. Hempstead Union Free Sch. Dist.*,
    803 F.3d 72 (2d Cir. 2015)............................................................................................4

## **Statutes**

42 U.S.C. § 1981-a...........................................................................................1, 6, 9

## PRELIMINARY STATEMENT

Amazon is the nation's largest company; yet despite is tremendous resources and supposed logistics expertise, it reacted slowly to the pandemic, subjecting its predominantly minority floor work force to health and safety risks for weeks, even long after the national declaration of a critical health emergency. After a lengthy investigation, the New York State Attorney General has sued Amazon because of this conduct.

Christian Smalls, an African American, worked at an Amazon Distribution Center in Staten Island. Deeply concerned that Amazon was abusing its mostly minority floor workers, he spoke out forcefully against the company's racism and insensitivity. Amazon then summarily fired him, claiming that he, not it, had violated safety protocols. In fact, Mr. Smalls did not re-enter Amazon's building after being advised not to, and, instead, spoke in a parking lot protesting Amazon for continuing to discriminatorily expose its minority workers to unsafe conditions. He explained to the world the way Amazon de-valued its minority workforce and, for this, he was fired.

Though this oppositional conduct is expressly protected by federal law, Amazon now would close this court to his discrimination and retaliation claims, equating issues of racial discrimination with "health and safety" concerns, and distorting and de-valuing his advocacy for people of color.

As plaintiff's Amended Complaint sufficiently alleges racial discrimination and retaliation for protected activity in violation of 42 U.S.C. § 1981-a, defendant's motion to dismiss should be denied and this matter permitted to proceed to discovery.

## STATEMENT OF FACTS

### A. Background

Plaintiff worked for Amazon for approximately four years and served as a Management Associate when the COVID-19 pandemic hit New York in mid-March 2020. Am. Compl. ¶ 7, 8. Defendant Amazon.com Services LLC was incorporated in the State of Delaware on May 28, 1996 and conducts business within this judicial district.  It may sue and be sued. *Id.* ¶ 3.

At the facility where plaintiff was employed, the subordinate distribution center workers were disproportionately African Americans, Latino, or immigrants, and the managers disproportionately Caucasian. *Id.* ¶¶ 19, 20.

### B. Amazon Slowly and Discriminatorily Reacts to the Pandemic

On March 24, 2020, one of plaintiff's co-workers tested positive for COVID-19. Following this positive test, Amazon did not issue any quarantine directives to any workers with whom she had contact. *Id.* ¶ 9, 10.  Amazon's failure to apply basic safety measures in the wake of the global pandemic alarmed plaintiff, as did the likely repercussions on the health of those working in the distribution center. *Id.* ¶ 14. Amazon did not provide its floor workers with personal protective equipment, hand sanitizer, or temperature checks.  Nor did it follow New York or CDC guidelines for social distancing on the work floor.  It also did not disinfect the facility. *Id.* ¶ 17. Concurrently, and by stark contrast, Amazon treated its overwhelmingly Caucasian managers differently, diligently attending to their health and safety concerns. *Id.* ¶ 20.

Between March 25-28, 2020, plaintiff went to work, serving as a liaison between the distribution center workers and management and advocating for heightened safety measures for the predominantly minority floor workers. *Id.* ¶¶ 15, 21.  During this period, Amazon ignored

Smalls' expressed concern that it was subjecting its primarily minority workforce to inferior safety conditions.

On March 28, 2020, defendant advised Smalls that he was not to return to work and would be placed on a paid leave. *Id.* ¶¶ 13, 21, 22.

### C. Plaintiff's Protected Activity in Public Demonstration

On March 30, 2020, plaintiff returned to the distribution center to lead a public demonstration of approximately 60 workers in the parking lot. *Id.* ¶ 23. He did not enter Amazon's distribution center.

At this demonstration, plaintiff opposed Amazon's discriminatory practices, to wit, that it was subjecting its minority workforce to inferior and dangerous work conditions. *Id.* ¶ 26. Plaintiff and other workers publicly demanded that Amazon close down this distribution center until it could be sufficiently sanitized. *Id.* ¶ 24.

### D. Defendants Retaliate Against Plaintiff

Within two hours of his public demonstration, Amazon terminated plaintiff, claiming that he had violated its quarantine order. *Id.* ¶ 27. In fact, Amazon had no official policy at this time for employee quarantining or contact tracing and, five days earlier, plaintiff had requested clearer direction and guidance from Amazon for quarantine procedure. *Id.* ¶ 12, 30.

A few days later, Amazon's General Counsel, David Zapolsky, Esq., issued a memo to the CEO, Jeff Bezos, indicating that Amazon should allow plaintiff to be the face for the workers protesting its discriminatory and dangerous working conditions. *Id.* ¶¶31, 49. Zapolsky stated that Smalls, who is African American, was "not smart or articulate" and suggested that the company would easily be able to defeat his public criticisms. *Id.* ¶¶ 31, 49.

In his Complaint, plaintiff claims that defendant violated federal civil rights law when it terminated him both on account of his race and following his public opposition to its racially discriminatory practices. *Id.* ¶ 49. Defendant insists that plaintiff has not plausibly alleged that he was terminated because of his race or any protected activity and that his claims are preempted by the National Labor Relations Act.  In addition, defendant argues that plaintiff lacks standing for a putative class claim and cannot challenge Amazon's policies. As set forth below, all of defendant's arguments fail.

## ARGUMENT

### POINT I:       MOTION TO DISMISS STANDARDS

In deciding whether a complaint states a claim, the court must accept as true all factual allegations set forth in their complaint and draw all reasonable inferences in favor of the plaintiff. *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002).

To defeat a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In resolving such a motion, the issue is not whether plaintiff is likely to prevail, but "whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful [retaliation], *i.e.*, whether plaintiffs allege enough to "nudge their claims across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 803 F.3d 72, 87 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007) (emphasis in original)).

## POINT II:  PLAINTIFF  SUFFICIENTLY  ALLEGES RACIAL DISCRIMINATION

To set forth a plausible claim of race discrimination, a plaintiff must allege the elements required by *McDonnell Douglas*, to wit, that he was a member of a protected class, qualified for his position, was subjected to adverse action, and provided at least minimal support for the conclusion that his employer was motivated by discriminatory intent. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Indisputably, plaintiff is African American, qualified for his job and was subject to adverse action.  Plaintiff contends that the reason provided for his termination, that he violated a quarantine order, was false and pretextual in that Amazon did not have any quarantine policy, had selectively asked him to leave its premises because of his advocacy and was not then affording workers basic health and safety protection.  In this context, claiming that his conduct endangered workers is the height of hypocrisy and pretext where the company itself was not implementing basic health and safety measures.

Instead, he plausibly alleged that he was fired because management believed that, as an African American, defendant viewed as "not smart or articulate," he would be a good target as Amazon sought to discredit those critical of its lackadaisical implementation of safety protocols. In response, Amazon claims that its Vice President's comments, made public a few days after plaintiff's termination, do not reveal that their author knew plaintiff's race or that he influenced the termination decision.  These are implausible assertions; by then, Smalls' image had been plastered across the media, and the thinking expressed by such a senior official presumptively explained the termination decision as racially charged.  Denying that its decision makers knew Smalls' race is like denying that those who tarred Michael Dukakis with the Horton pardon during the 1988 presidential race did not know Hortons' race.

On pages 21-25, defendant claims that the FAC does not allege a plausible claim of intentional racial discrimination arising under 42 U.S.C. section 1981. We respond next to these arguments:

1. The FAC does allege that plaintiff was intentionally terminated on the basis of his race in violation of 42 U.S.C. § 1981-b. See FAC ¶ 49. Termination of employment based on race is explicitly prohibited by this statute.

2. A plaintiff alleging a violation of this law needs to plead sufficient facts to plausibly conclude that his/race was a "but for" cause for his injury. *Comcast Corp. v. Ass'n of African American-Owned Media*, 140 S.Ct.1009 (2020) (vacating and remanding Court of Appeals' decision to allow district court to assess sufficiency of complaint applying "but for" standard). S/he need not use these words in fashioning his complaint. Here, a fair reading of the complaint satisfies this standard, as plaintiff alleges that he was terminated on account of his race, concluding that "as a black man" he would serve as a weak spokesman for workers Amazon was mistreating and that Amazon could elicit public support by making him the face of the movement opposing its discriminatory practices. FAC ¶ 49.

3. Defendant next claims that plaintiff does not allege plausible racial discrimination, arguing that, if it treated overwhelmingly white managers better than overwhelmingly minority floor workers with regard to COVID-19 protection, this would not raise a claim of discrimination in the terms and conditions of employment, as protected by 42 U.S.C. § 1981. However, section 1981 assures the equal enjoyment by African Americans of the same "benefits, privileges, terms and conditions of the employment relationship" as whites enjoy. Here, whites and blacks worked in the same building, were susceptible to the same disease and allegedly were disparately treated in the company's provision of health and safety protections. Defendant argues that, since not all

floor workers are minority group members and not all favored managers are alleged to be white, plaintiff cannot plausibly allege such a pattern of intentional racial discrimination. Again, no case law supports the notion that when alleging such a pattern of discrimination, a plaintiff must show that every disadvantaged person was of the same minority group and that only whites were advantaged. In *United States v. Yonkers Bd. of Educ.,* 624 F. Supp. 1276 (S.D.N.Y.1985), aff'd, 837 F.2d 1181 (2d Cir. 1987), *cert. denied*, 486 U.S. 1055, 108 S. Ct. 2821, 100 L. Ed. 2d 922 (1988), plaintiffs established that the City of Yonkers and its School Board unconstitutionally discriminated against racial minorities by prohibiting the construction of assisted housing in overwhelmingly white neighborhoods and by engaging in a myriad of segregative practices. Those eligible for assisted housing opportunities were disproportionately, but not exclusively, members of a minority group. Nor was such racial exclusivity critical where plaintiffs established that the defendants' intent was to discriminate against the majority of those eligible for such housing on account of their race. Likewise, here, plaintiff alleges that defendant intended to discriminate against minority group workers by adopting policies and practices that disproportionately adversely affected them. While Amazon claims that any alleged difference in its treatment of line workers and managers fails to raise an inference of racial discrimination, it is plainly premature to so conclude.

The cases defendant cites for its contrary arguments [pages 22-24 of its brief] are unpersuasive on the relevant issues:

1. This is not a case where plaintiff's class-based 1981 claim relates to discipline. All of the cases defendant cites relate to discrimination claims based on asserted disparate discipline imposed upon minority, as opposed to Caucasian, workers. In such cases, the nature of the plaintiff's employment status is undeniably relevant to claims of disparate treatment and our courts

have repeatedly so held. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015); *Men of Color Helping All Soc'y, Inc. v. City of Buffalo*, 529 F. App'x 20, 26-27 (2d Cir. 2013) (summary order); *Hill v. Airborne Freight Corp.*, 93 F. App'x 260 (2d Cir. 2004) (summary order). None of these cases resolves a motion to dismiss, and each was decided on a full record. The relevant issue raised in each was whether a plaintiff suffered disparate treatment, almost always discipline, when compared with other similarly situated employees. Here, plaintiff makes a different allegation, not that minority workers were more harshly disciplined than whites, but that, as a group, they were denied health and safety protocols while white workers were provided the same. Each case defendant cites relates to claims of adverse action like termination or failure to promote, making apposite comparators. But the claim asserted here is different and does not depend on the identicality, or even the material similarity, of the jobs being performed by the racially disparate groups of workers. Rather, what is being litigated is whether, as alleged, defendant was relatively indifferent to the same health and safety needs of its line workers as compared with a racially distinct group of workers. Indeed, plaintiff asserts that the different job titles of the workers is irrelevant to whether the company had the same responsibility to protect and value one group of workers compared to the other.

2. Plaintiff was terminated from employment and the minority workers he seeks to represent were subjected, allegedly, to different and inferior terms and conditions of employment when compared with other employees to whom Amazon owed the same duty – to ensure a safe workplace. By so treating plaintiff and those he seeks to represent, defendant violated 42 U.S.C. § 1981. And, at this stage of the proceeding, plaintiff need not allege more than he has: that Amazon provided a higher level of protection to the white managers than it did to the overwhelmingly minority line workers.

8

## POINT III:   PLAINTIFF HAS SUFFICIENTLY ALLEGED RETALIATORY DISCHARGE

### A.  Plaintiff was engaged in protected activity.

42 U.S.C § 1981 provides a cause of action for individuals retaliated against for complaining about racial discrimination. *See CBOCS W, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The elements of such a claim are: [a] plaintiff's participation in protected activity; [b] defendant's knowledge of such participation; [c] an adverse employment action; and [d] a causal connection between the two. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). A person who acts to protest or oppose statutorily prohibited discrimination is also protected by the statute. *See Hayes v. Cablevision Svs. New York City Corp.*, No. 07-CV-2438 (RRM), 2012 WL 1106850, at *16 (E.D.N.Y. March 31, 2012). "A complaint about conduct prohibited by the statute need not mention discrimination or use any particular language, but ambiguous complains that did not make the Employer aware of alleged discriminatory misconduct do not constitute protected activity." *Id.* In the hours before his termination, plaintiff criticized defendant for implementing policies which favored the health and safety of white managers over minority floor workers. Plaintiff had observed health and safety protocols protecting the former group while floor conditions closely grouped unprotected workers. Plaintiff also contended that the difference in treatment related to the racial disparities between the two groups of workers and so stated. Such speech acts sufficiently constitute opposition, and our civil rights laws protect workers who engage in such speech from retaliation.

In response, defendant claims that Smalls' retaliation claim fails because he did not sufficiently plead that he engaged in protected activity prior to his termination. But the FAC alleges that plaintiff complained directly to managers in the days leading up to his termination. Defendant alleges that these complaints do not constitute protected activity because plaintiff discussed only

"health and safety issues" and did not frame his alarm in racial terms.  But this analysis distorts the complaints plaintiff made and denudes them of their actual character: he contended that the defendant's failure to implement appropriate practices were racially discriminatory because of the overwhelming minority representation on the work floor.

Likewise, the fact that plaintiff made claims of disparate treatment with respect to the health and safety protection accorded minority workers does not insulate Amazon from civil rights laws prohibiting racially retaliatory discharge or make inapplicable their protections.  The question is whether plaintiff's advocacy for minority group rights motivated the adverse action against him. The fact that Amazon engaged in such retaliation within the context of its response to the pandemic does not render impotent the civil rights protections upon which plaintiff relies.

Defendant errs in comparing plaintiff's claim to those considered in *Antonmarchi v. Consol Edison Co. of N.Y.*, 2008 WL 4444609, at *12 (S.D.N.Y. Sept 29, 2008) and *Gaughan v. Rubenstein,* 261 F. Supp. 3d 390, 418 (S.D.N.Y. 2017).  In *Antonmarchi*, plaintiff alleged, *inter alia*, retaliation by his employer in response to complaints of discrimination and reports of workplace safety violations. *Antonmarchi*, 2008 WL 4444609, at *12.  While Antonmarchi's claims of retaliatory adverse actions following his complaints of safety concerns did not survive summary judgment, his claims of retaliation for adverse actions following complaints of racial discrimination did. Id.

Here, Smalls complained to managers that 1) Amazon's health and safety measures for line workers in the beginning of the pandemic were inadequate, Am. Compl. ¶¶ 15, 17, and that 2) Amazon's disregard for proper safety measures was racially discriminatory because it exposed a class of primarily minority workers to unsafe working conditions, Am. Compl. ¶¶ 15, 17-19, unlike the treatment accorded overwhelmingly Caucasian managers. Am. Compl. ¶¶ 20, 35, 47. Contrary

10

to Defendant's claim, Plaintiff pled that he was retaliated against for opposing Amazon's discriminatory practices, not for his complaints of health and safety. Am. Compl. ¶¶ 26, 27. The fact that Amazon's discriminatory behavior created health and safety concerns does not alter the fact that he contended that its behavior was also racially discriminatory and alleges that this speech caused his termination.

The FAC clearly avers that Smalls' complaints to Defendant went beyond health and safety concerns and that he was vocal about Amazon's discriminatory treatment of its disproportionately minority workforce. Am. Compl. ¶¶ 19, 20, 26, 32, 34, 36.

In *Gaughan, supra.*, plaintiff complained to her employer only of the unsanitary conditions of the office in which she was working. 261 F. Supp. 3d at 418. The court noted that, while it was "unclear as to what [Gaughan's] protected activity was," her claim was dismissed because her "termination occurred long after Gaughan could have engaged in any conceivable protected activity." *Id.*

By contrast, here, as noted, Smalls plainly complained about Amazon's disparate adverse treatment of its disproportionately minority floor workforce as compared to its predominately white management class.

## B. Defendant knew of plaintiff's protected activity

Defendant's further claim that, even if plaintiff did engage in protected activity, his retaliation claim fails because he did not make Amazon aware of such activity. Again, defendant's analysis misstates the facts as pled and ignores Amazon's knowledge of its own workforce. Defendant errs in relying on *Fouche v. St Charles Hosp, Harrison v SUNY Downstate Med Ctr,* and *Haggood v Rubin and Rothman LLC.* In all these cases, plaintiffs' retaliation claims were

dismissed because the complaints made during their employment did not allege discrimination based on race or gender.

Here, the facts tell a different story: plaintiff began his advocacy for a class of primarily minority workers a few days before his termination. FAC ¶ 12. He presented to his white managers a race-related complaint - defendant's discriminatory safety practices and procedures endangered predominantly minority line workers. FAC ¶ 14-15, 17-20, 26. Additionally, Amazon's managers knew the racial composition of its own workforce. Amazon well understood that Smalls was challenging practices which he characterized as racially discriminatory because of the different treatment of the two racially disparate groups of employees: he expressly argued that Amazon was placing its disproportionately minority workforce in inferior working conditions while it was protecting white managers. FAC ¶ 20, 34, 45. Finally, plaintiff spoke out in the presence of sixty other workers in Amazon's parking lot and, within two hours, was terminated. The FAC makes clear that Amazon managers knew the content of his speech before he was fired.

## C. The FAC Plausibly alleges that Defendant terminated plaintiff due to his protected activity

While defendant claims it terminated plaintiff for failure to follow a quarantine order, plaintiff's complaint plausibly avers that he actually was terminated on account of his race and his opposition to discriminatory practices.

Defendant terminated plaintiff Smalls within two hours of publicly speaking out against Defendant's discriminatory policies. FAC ¶ 27. The causal connection between plaintiff's oppositional speech acts and his termination may be inferred from the temporal proximity between the two.

While Amazon claims it terminated plaintiff because he violated a quarantine, a fair reading of the complaint suggests that only after plaintiff began advocating for minority workers

and expressing concerns about disparate treatment as between overwhelmingly minority and overwhelmingly Caucasian groups of workers did Amazon tell him to go home. It did not do so while implementing any generalized set of health and safety protocols, but to remove him from the workplace due to his advocacy. The FAC further alleges that Amazon did not issue any quarantine order against him for several days following his known exposure to COVID-19 and only did so after he had been present in the facility advocating on behalf of the minority workforce. Am. Compl. ¶¶ 10-6, 24, 30, 33. At the time, it had no general quarantine policy, and no social distancing was being observed or enforced on the floor. Indeed, when it terminated plaintiff, Amazon had "no practice of contact tracing and did not quarantine workers exposed to those, like Barbara Chandler, who did test positive for COVID 19."

Instead, the sequence of events certainly allows an inference that Amazon acted out of retaliatory intent and makes *Gaughan* inapposite. While nothing precludes Amazon from arguing that it terminated plaintiff due to his alleged violation of a quarantine order, the court cannot determine its motivation on this motion.

Additionally, while defendant claims Smalls violated a directive to "maintain social distancing at the workplace" while leading a public demonstration against its discriminatory safety practices, it fails to recognize that Smalls led this demonstration in the parking lot of the facility and did not violate any social distancing directive in so doing or meet with any co-workers in any close indoor quarters. And according to the FAC, at the same time he was demonstrating against its discriminatory practices, defendant was requiring its workers to engage in close contact with each other in an unsanitized building. Am. Compl. ¶ 24.

Thus, plaintiff sufficiently alleges that retaliation -- rather than the alleged violation of any quarantine directive or order -- is the reason Amazon's decided to terminate his employment.

13

Defendant attempts to paint plaintiff as a conniving and manipulative employee by citing various articles and videos, but any such portrayal should be ignored as it introduces new "facts" into the record that are not alleged or otherwise incorporated into the FAC. Materials such as these should not be considered before the discovery stage, and the Court should strike them from the instant motion. *See Heckman v. Town of Hempstead*, 568 F.App'x. 41, 43 (2d Cir. 2014) (summary order) ("The Court is entitled to consider facts alleged in the complaint or documents attached to it or incorporated in it by reference, documents integral to the complaint or relied upon in it or facts of which judicial notice may properly be taken.").

> **POINT IV:   PLAINTIFF'S STATE- AND LOCAL-LAW RETALIATION CLAIMS ARE NOT PREEMPTED BY THE NATIONAL LABOR RELATIONS ACT**

Defendant next submits that this Honorable Court should dismiss his retaliation claims arising under state and local human rights laws as pre-empted.  In so doing, again, defendant miscasts the FAC, making it appear that he claims to have been fired for engaging in concerted labor organizing, as opposed to racially oppositional conduct.  In addition, defendant has not cited a single case in which a court has held that race-related retaliation claims are pre-empted by federal labor law.  Instead, the cases cited relate to retaliation against traditional labor organizing activities, a matter pre-empted by federal law.  As plaintiff was not engaging in any such activity, the cases defendant cites are inapposite, and this prong of its motion should be denied.

New York State and New York City both have enacted civil rights laws that disallow retaliation for opposing racially discriminatory practices.  These laws do not implicate the concerns raised by *Ass'n of Car Wash Owners, Inc v. City of New York*, 911 F.3d 74, 81 (2d Cir. 2018) (vacating grant of summary judgment to plaintiff while noting that state and locality cannot regulate activities which the NLRA arguably protects or prohibits).  The FAC does not suggest

14

that plaintiff was engaging in any form of union organizing or that retaliating against him for his

opposition to race discrimination implicates any issue within the jurisdiction of the NLRA.  That

he was organizing workers against defendant's discriminatory practices and seeking redress from

those practices does not implicate any NLRA issues.  *See* FAC at 47. Accordingly, the court should

not be distracted by this non-issue and should deny this prong of defendant's motion.  Again,

defendant's use of extraneous materials which are inessential to the Complaint is prohibited and

those materials should be stricken.

**POINT V:        THE COURT SHOULD DEFER RULING ON
CLASS   CERTIFICATION   UNTIL   IT
RESOLVES THIS MOTION TO DISMISS**

Plaintiff's complaint alleges that defendant treated line workers in an intentionally

discriminatory manner, subjecting them to significantly greater risk of COVID 19 than it did

disproportionately Caucasian managers housed in the same building.  Plaintiff has not yet moved

for class certification, choosing to await a determination on this motion.

As it did with regard to the litigation filed by the New York State Attorney General,

Amazon seeks to pre-empt that timetable by filing to dismiss class claims before the motion is

filed.  The court should decline to visit these issues until plaintiff files for class certification, a

process which anticipates submissions dehors the Complaint.

We offer these preliminary responses to the submission defendant has made on these

issues, but note that class certification papers will address each issue defendant now raises:

1. While plaintiff may not be positioned to seek injunction relief due to his termination,

this does not prevent him from seeking compensatory relief on behalf of class members injured by

defendant's allegedly discriminatory and callous disregard for health and safety of floor workers.

2. Plaintiff does contend that defendant acted toward floor workers in a common manner, causing them injury, and declaratory relief serves as a predicate for class-wide damages.

3. Plaintiff was similarly situated to the floor workers for, as the FAC makes clear, he worked on the floor and was in contact with a floor worker who contacted COVID-19 and posed a threat to other persons who were expected to continue to report to work and work in close proximity to each other.

4. OSHA has no jurisdiction over allegations that defendant acted as it did and omitted to act as it did intentionally because of the racial composition of its line workers. *Palmer v. Amazon, Inc.*, 2020 WL 6388599 (E.D.N.Y. November 2, 2020) is inapposite since it raised no race-discrimination claim. Instead, it alleged that Amazon's failure to conform to CDC guidelines created a public nuisance and breached the duty to create and provide a safe workplace and that defendant failed to timely pay COVID-19 leave. If plaintiff is correct and Amazon intentionally put at risk an overwhelmingly minority work force while protecting even less vulnerable employees who were not working on the floor by ensuring their receipt of proper PPE and other essentials, Amazon cannot escape liability by claiming that federal civil rights laws do not apply to it or do not reach such a form of intentional racial discrimination. No such case holds, and none could reasonably conclude.

16

## CONCLUSION

For the reasons set forth herein, Amazon's motion should be denied in its entirety and a schedule established for plaintiff to move for class certification.[1]

Dated:   April 5, 2021

Respectfully submitted,

_____
TRICIA (CK) HOFFLER
The CK Hoffler Firm
23 Lenox Pointe, N.E.
Atlanta, GA 30324
Co-Counsel for Plaintiff


_____
MICHAEL H. SUSSMAN
Sussman & Associates
PO Box 1005
Goshen, NY 10924
(845)-294-3991
Co-counsel for Plaintiff

---

[1] While plaintiff believes the FAC meets pleading requires and sets forth plausible causes of action, plaintiff respectfully requests leave to file an amended complaint should the Court identify any pleading deficiencies.